IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIE E. RAGSDALE,                     )
                                       )
            Plaintiff,                 )
                                       )      No.  06 C 4316
      v.                               )
                                       )      Judge Robert W. Gettleman
AETNA LIFE INSURANCE COMPANY,          )
                                       )
            Defendant.                 )

## MEMORANDUM OPINION AND ORDER

Plaintiff Marie E. ("Elaine") Ragsdale filed a complaint against defendant Aetna Life

Insurance Company ("Aetna"), alleging unlawful denial of disability benefits under ERISA

§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[1] The parties have filed cross motions for summary

judgment pursuant to Fed. R. Civ. P. 56.  For the reasons discussed below, defendant's motion

for summary judgment is granted, plaintiff's motion for summary judgment is denied, and the

denial of benefits is affirmed.

## FACTS[2]

Plaintiff was employed as a project manager by Central DuPage Hospital.  Plaintiff was a

participant in the Central DuPage Health Welfare and Flexible Benefits Plan ("the Plan"),

underwritten by defendant, to which she paid premiums for long term disability insurance.  The

---

[1]Plaintiff originally filed a claim against Central DuPage Hospital for unlawful retaliation
under 29 U.S.C. § 1140.  On January 9, 2007, the court granted Central DuPage's motion to
dismiss the claim against it with prejudice.

[2]Unless otherwise noted, these facts are taken from the parties' L.R. 56.1 Statements.

Summary Plan Description identified the "Plan Sponsor" as Central DuPage Health and the "Plan Administrator" as Vice President of Human Resources, Central DuPage Health.

In November 2002, plaintiff was bitten by a tick and began suffering from symptoms associated with lyme disease, including nausea, vomiting, skin rashes, chronic fatigue, and memory loss. Plaintiff sought treatment from four different physicians, all of whom believed that plaintiff had contracted lyme disease. Plaintiff first sought treatment from Dr. Anette Mnabhi, DO, on January 7, 2003. Dr. Mnabhi discussed antibiotic treatment with plaintiff and treated her with homeopathic remedies through February 13, 2003. Dr. Mnabhi referred plaintiff to Dr. Joseph Mercola, who treated plaintiff with diet and herbal treatments from February 23, 2003, through April 1, 2003. From May 10, 2003 to November 4, 2003, Dr. Thomas Hesselink, MD, treated plaintiff with antibiotics. On September 9, 2003, Dr. Hesselink provided a note to Central DuPage authorizing plaintiff to return to work on September 15, 2003, stating that plaintiff was "advised against overtime, regular 40 hour week is acceptable." Dr. Rindie Coker, a naprapath specializing in connective tissue disorders, treated plaintiff with nutritional therapy and neuromodulation beginning in March 2004.

Plaintiff continued to work for the hospital for two years after contracting lyme disease. On multiple occasions, plaintiff took leaves of absence as a result of her symptoms. On May 13, 2005, plaintiff stopped working because her symptoms rendered her unable to perform her job duties.

On August 1, 2005, plaintiff applied for long term disability benefits pursuant to the Plan, which would have provided plaintiff with 50% of her monthly salary. Plaintiff submitted medical records from Dr. Coker, including a narrative from December 5, 2005, which stated that

plaintiff's lyme disease was chronic, even with proper antibiotic treatment. Dr. Coker's report also stated that plaintiff was "not at this time totally disabled" and was "capable of sedentary work activity," defined as "moderate limitation of functional capacity. Exerting up to 10 pounds of force occasionally. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time." Dr. Coker also stated that plaintiff had "no limit on ADL [activities of daily living]/driving. May not push past fatigue or be in continually stressful situating [sic] subject herself to increased risk of infection."

Plaintiff also submitted a Work History and Educational Questionnaire dated August 1, 2005. In that questionnaire, she stated that in her work for Central DuPage, she spent five hours per day sitting, one hour standing, and two hours walking. She stated that she occasionally bent or stooped, reached above her shoulders, knelt, pushed or pulled, and lifted up to ten pounds. Additionally, plaintiff provided a Capabilities and Limitations Worksheet completed by Dr. Coker on August 4, 2005. Dr. Coker stated in that worksheet that plaintiff could: (1) continuously sit; (2) frequently do fine and gross manipulation and repetitive motion, stand, sit, walk, and lift up to five pounds; and (3) occasionally grasp objects with her hands, lift six to ten pounds, kneel, push, pull, reach above her shoulders, reach forward, carry objects, bend, and twist. Dr. Coker also stated that plaintiff could operate a motor vehicle. Plaintiff asked if additional medical records were necessary; defendant told her it needed only the records from Dr. Coker.

On August 25, 2005, plaintiff underwent an adrenal stress test. Plaintiff tested "normal" for three of the four tests on that day, and her overall cortisol "burden" was within the normal range.

At the time plaintiff submitted her application for disability benefits, the Plan defined

"total disability" as follows:

> You will be deemed to be totally disabled while either of the following applies to
> you:
> • During the period which ends right after the first 48 months benefits are
> payable in a period of total disability:
> You are not able, solely because of injury or disease, to perform
> the material duties of your own occupation; ....
> • Thereafter during such period of total disability:
> You are not able, solely because of injury of disease, to work at
> any reasonable occupation.

On October 31, 2005, defendant notified plaintiff by telephone that she did not qualify

for long term disability benefits. On November 9, 2005, plaintiff received a letter from

defendant stating that she did not qualify for benefits because she failed to present sufficient

"objective" information to support a finding of "total disability" as defined by the Plan.

Defendant stated that it did not have enough information to determine whether plaintiff could

perform all material duties of her regular position or any other position within the hospital.

Defendant's letter stated that an independent consultant had made the determination after

reviewing plaintiff's submitted records. The letter requested all medical records from physicians

who had treated plaintiff.

Plaintiff filed an internal appeal of the November 9, 2005, denial of benefits, with the

assistance of the Illinois Department of Insurance. Plaintiff provided defendant with all medical

records regarding her treatment for lyme disease, including records from Drs. Mnabhi, Mercola,

Hasselik, and Coker. Defendant did not ask plaintiff to undergo an independent medical

evaluation or an evaluation by a functional capacity evaluator.

On January 23, 2006, defendant notified plaintiff, through a letter to Leigh Strode at the Illinois Department of Financial and Professional Regulation, that her appeal had been denied. The letter stated that a vocational rehabilitation consultant had reviewed plaintiff's file and found that her position with the hospital was categorized as "sedentary." The letter also stated that plaintiff's file had been reviewed by Dr. Tracy Schmidt, a medical consultant. Dr. Schmidt determined that the file lacked evidence that plaintiff could not function in a full-time sedentary position. Dr. Schmidt also stated that she attempted to contact Dr. Coker regarding plaintiff's claim, but that she could not reach Dr. Coker.

On February 20, 2006, plaintiff responded to the letter denying her appeal. That response included a letter from Dr. Hasselik, which stated that there was no need for tests, because plaintiff had suffered a tick bite and experienced symptoms consistent with lyme disease as established by the Center for Disease Control ("CDC"). Dr. Hasselik also stated that according to the CDC, lyme disease should be diagnosed by symptoms guidelines, rather than medical tests, which are unreliable. Plaintiff also submitted a letter from Dr. Coker, which stated that she attempted to return Dr. Schmidt's call but did not receive a return call. Dr. Coker also stated that plaintiff's symptoms were consistent with lyme disease and that plaintiff was responding to treatment for the disease.

On March 10, 2006, defendant affirmed its denial of benefits to plaintiff. Plaintiff has exhausted all internal and administrative remedies available under the Plan.

## DISCUSSION

Both parties have filed motions for summary judgment. Under Fed. R. Civ. P. 56(c), a court should grant a motion for summary judgment if "there is no genuine issue of material fact

and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits that demonstrate an absence of material fact. See Celotrex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

Defendant has moved for summary judgment on the ground that plaintiff has sued the wrong party. Defendant is correct. The Seventh Circuit has held explicitly that the plan is the only proper defendant in an action to recover disability benefits under § 502(a)(1)(B), and it has "continually noted that ERISA permits suits to recover benefits only against the plan as an entity.'" Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 872 n. 4 (7th Cir. 2001), quoting Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996).[3]

Even assuming, however, that plaintiff had sued the proper party, the court must still rule against plaintiff and in favor of defendant unless defendant acted in an "arbitrary and capricious" manner, the standard under which this court must evaluate plaintiff's claim. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989). The arbitrary and capricious standard is

---

[3]This court has previously permitted plaintiffs to sue a plan's insurer, but only in instances where the plan itself could not be identified, which is not the case here.

extremely deferential, and a plan administrator's decision must be affirmed unless it is "clearly unreasonable." Hightshue v. AIG Life Insurance Co., 135 F.3d 1144, 1147 (7th Cir. 1998). "Under this deferential standard, the plan's decision to deny benefits is reviewed only to determine whether it was downright unreasonable." Id. (quoting Donato v. Metropolitan Life Insurance Co., 19 F.3d 375, 380 (7th Cir. 1994)). If the decision made by the administrator "was made rationally and in good faith," the court will not second-guess whether the decision was correct. Hightshue, 135 F.3d at 1147 (quoting Brown v. Retirement Committee of Briggs and Stratton, 797 F.2d 521, 529 (7th Cir. 1986)).

In the instant case, defendant reviewed plaintiff's initial application, which included a statement from her treating physician that she was "not totally disabled, was "capable of sedentary work activity," and had "no limit" on driving or daily life activities. Defendant also considered questionnaires completed by plaintiff and Dr. Coker regarding plaintiff's physical capabilities. After plaintiff appealed the denial of benefits, defendant considered medical records submitted by four treating physicians and had a medical consultant review plaintiff's file. Defendant also had a vocational rehabilitation consultant review plaintiff's position within the hospital; that consultant determined that plaintiff's position[4] was "sedentary," the type of work of which plaintiff's own physician found her capable. Defendant's review of plaintiff's claim

---

[4]Plaintiff asserts that defendant used the wrong position description in evaluating her position's required level of activity. According to plaintiff, she is a project manager, but defendant used a "program developer" position description for the evaluation. Plaintiff herself, however, identified her position as "program developer" in the Employee Request for Information she completed along with her application for disability benefits, as did her supervisor, and she provided defendant with an Attending Physician Statement in which she stated that her position was "Program Developer/Project Manager." Plaintiff herself uses these position titles interchangeably, and she does not dispute that her position was, in fact, "sedentary."

was thorough, and the court cannot conclude that it acted in an "arbitrary and capricious" manner in denying benefits to plaintiff.  For that reason, in addition to the fact that plaintiff improperly sued defendant instead of the Plan itself, the court grants defendant's motion for summary judgment and denies plaintiff's motion.

## **CONCLUSION**

For the reasons discussed above, defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and the denial of benefits is affirmed.


**ENTER:**       **June 27, 2007**


_____
**Robert W. Gettleman**
**United States District Judge**